**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2497, 17-2930
_____

NATIONAL LABOR RELATIONS BOARD,
Respondent/Cross-Petitioner

v.

MIDLAND ELECTRICAL CONTRACING CORP.
Petitioner/Cross-Respondent
_____

On Application for Enforcement and
Cross-Petition for Review of an Order of
the National Labor Relations Board
(NLRB-1 Nos. 29-CA-144562 & 29-CA-144584)
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 9, 2018
_____

Before: McKEE, VANASKIE* and SILER•, *Circuit Judges*.

(Opinion filed: May 28, 2019)

_____

* The Honorable Thomas I. Vanaskie retired from the Court on January 1, 2019 after the submission of this case, but before the filing of the opinion. This opinion is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d) and Third Circuit I.O.P. Chapter 12.

• The Honorable Eugene Edward Siler, Jr., Senior Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation.

_____

OPINION**

_____

McKEE, *Circuit Judge*.

The National Labor Relations Board seeks enforcement of a Board order issued against Midland Electric Contracting Corporation on June 6, 2017. Midland cross-petitions for review of the order and asserts that the Board's findings are unsupported by substantial evidence.

We review the Board's findings of fact and legal conclusions.[1] The Board's findings of fact are presumed conclusive if supported by substantial evidence.[2] The Board's legal conclusions are upheld if based on a "reasonably defensible" construction of the National Labor Relations Act.[3]

## I.

The Board Order resulted from Midland's attempted withdrawal from a collective bargaining association—the Building Industry Electrical Contractors Association (the Association). In June 2010, Midland became a member of the Association by executing a "Membership Agreement" which designated the Association as Midland's bargaining representative in all negotiations with the United Electrical Workers of America, IUJAT,

---

** This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] We have jurisdiction to review final Board orders under 29 U.S.C. § 160(e) and (f).
[2] 29 U.S.C. § 160(e).
[3] *Quick v NLRB*, 245 F.3d 231, 241 (3d Cir. 2001) (quoting *Ford Motor Co. v. NLRB*, 441 U.S. 488, 497 (1979)).

2

Local 363 (the Union), and bound Midland to any future agreement between the Association and the Union. The "Membership Agreement" specified that "resignation from the Association must be in writing and served on the Association by certified mail no less than 90 days prior to the date of expiration of the agreement between the Association and [the Union]."

Following execution of the "Membership Agreement," Midland, the Association, and the Union executed the "Assumption Agreement" under which Midland assumed a 2008–2011 CBA between the Association and the Union. The Assumption Agreement provided that, "the Association shall, on behalf of [Midland], negotiate successor [CBAs], amendments, renewals, and extensions" and bound Midland to all future CBAs unless Midland properly terminated the relationship in accordance with termination provisions in the active CBA.

Following the expiration of the 2008–2011 CBA, the Association and the Union executed a successor CBA with a term of December 1, 2011 through November 30, 2014. That 2011–2014 CBA provided that it would remain in force for its term "unless either party gives written notice to the other party. . . at least sixty (60) days prior to the date of [its] expiration [ ], that it desires to modify or amend and/or re-negotiate same." In August 2014, the Association and the Union began negotiations for another successor CBA which was to run from December 1, 2014 through November 30, 2017. On September 4, Midland sent a withdrawal notice to the Association and the Union stating it would not renew the operative CBA beyond November 30, 2014. At the time of this notice, Midland ceased making payments under the 2011–2014 CBA and now claims it is

3

not bound to the 2014–2017 CBA based on its purportedly timely withdrawal.

An ALJ found that Midland failed to timely withdraw from the Association, was bound to the 2014–2017 CBA, and had violated Section 8(a)(5), (a)(1), and (d) of the Act. The Board adopted the judge's findings and ordered Midland to cease and desist from refusing to bargain collectively with the Union. The NLRB then petitioned for enforcement of the Board Order and Midland cross-petitioned for review.

**II.**

Midland argues that it is not bound to the 2014–2017 CBA because: (1) the "Assumption Agreement" demonstrates consent between the Union, the Association, and Midland to allow withdrawal after the commencement of negotiations; and (2) Midland timely withdrew in compliance with the procedures set forth in the "Assumption Agreement," which it asserts superseded the "Membership Agreement."

We agree with the ALJ that Midland was bound to the 2014–2017 CBA based on its failure to withdraw *prior* to the commencement of negotiations for the successor CBA in August 2014. Midland failed to expressly raise its argument that the "Assumption Agreement" establishes consent to permit withdrawal in both its exceptions to the ALJ's findings and its supporting brief. It is the well-established practice of the NLRB to adopt an ALJ's findings in such circumstances.[4] Accordingly, the Board appropriately adopted

---

[4] 29 C.F.R. § 102.46(a)(1)(ii); *Holsum de Puerto Rico, Inc.*, 344 N.L.R.B. 694, 694 n. 1 (2005) (disregarding an argument that respondent's failed to raise in its exceptions or supporting brief).

the ALJ's findings.[5]

We also reject Midland's second argument because substantial evidence supports the NLRB's determination that Midland failed to comply with applicable contractual withdrawal provisions contained in the "Membership Agreement." A withdrawal is timely if based "upon adequate written notice given prior to the date set by the contract."[6] Here, the "Membership Agreement" unambiguously provided a 90-day notice requirement prior to the expiration of the 2011–2014 CBA in order for Midland to timely withdraw.[7] Midland argues that the "Assumption Agreement" superseded the "Membership Agreement" and therefore, the 60-day withdrawal provision contained in the "Assumption Agreement" is controlling.[8]

A contract supersedes a prior contract between the same parties if the agreements

---

[5] The Board briefly assessed the insufficiency of the argument on the merits. It is an established Board principle that once negotiations involving an existing multiemployer unit have begun, an employer-member may not withdraw from the multiemployer association absent mutual consent or unusual circumstances. *Retail Assocs., Inc.*, 120 N.L.R.B. 388, 395 (1958). The Board rejected Midland's argument that the "Assumption Agreement" establishes sufficient consent to permit withdrawal.

[6] *Retail Assocs., Inc.*, 120 N.L.R.B. at 395.

[7] The Membership Agreement provides "[r]esignation from the Association must be in writing and served on the Association by certified mail no less than 90 days prior to the day of the expiration of the agreement between the Association and [the Union]."

[8] The "Assumption Agreement" provides that Midland "agrees to be bound by any and all amendments, renewals, and/or extensions of the above referenced Association [CBAs] unless and until this Agreement is properly terminated by either [Midland] or the Union in accordance with the renewal and/or Termination Provisions of the Association [CBA]." Article 38 of the 2011–2014 CBA provides that the agreement "shall remain and continue in full force and effect…from year to year thereafter, unless either party gives written notice to the other by certified mail, return receipt requests, at least sixty (60) days prior to the date of expiration of this Agreement, that it desires to modify or amend and/or re-negotiate same." JA 3, 11; 175, 196-97.

5

"completely cover the same subject matter" but contain inconsistent terms.[9] The Board correctly concluded that the "Membership Agreement" and the "Assumption Agreement" did not cover the same subject matter.[10] We also agree that the "Assumption Agreement" only applied to the 2011–2014 CBA and the "Membership Agreement" was the controlling document with regard to the relationship between Midland and the Association.

In essence, Midland attempts to use the "Assumption Agreement"—a document relating to a specific CBA—to withdraw from the Association itself. Withdrawal from a multiemployer bargaining association is distinct from terminating a CBA.[11] Even if Midland complied with the 60-day notice requirement of the "Assumption Agreement" such notice would only relate to the 2011–2014 CBA and nothing more. There is substantial evidence that Midland is bound to the 2014–2017 CBA based on its failure to timely withdraw under the "Membership Agreement."

## III.

For the foregoing reasons, we will grant the National Labor Relations Board's petition for enforcement in full.

---

[9] *Unique Art Mfg. Co.*, 83 N.L.R.B. 1250, 1251 (1949).

[10] The Board determined that the "Membership Agreement" related to the relationship between Midland and the Association and conferred a specific right for the Association to enter into CBAs on Midland's behalf. Conversely, the Board explained that the "Assumption Agreement" "overwhelmingly focuses on the CBA, and [Midland's] and Union's obligations thereunder, and is devoid of any specific references to [Midland's] membership in the Association."

[11] *Rome Elec. Sys.*, 349 N.L.R.B. 745, 747 (2007) ("an employer's withdrawal of negotiating authority from a multiemployer association is an action distinct from terminating a contract").